A95A1674. ALTERMATTS PAINTING et al. v. SUBSEQUENT INJURY TRUST FUND.
(464 SE2d 922)

BEASLEY, Chief Judge.

We granted Altermatts Painting and Selective Insurance Company discretionary appeal in this workers' compensation case to address the following question regarding the construction of OCGA § 34-9-363.1 (b): When a reimbursement agreement between an employer and the Subsequent Injury Trust Fund has been submitted to,

but not yet approved, by the State Board of Workers' Compensation, must the employer submit a settlement with its employee first to the Fund for approval or may the settlement be submitted directly to the Board? The answer is that the settlement must first be submitted to the Fund for approval.

Pursuant to OCGA § 34-9-363, Altermatts entered into an agreement with the Fund for reimbursement of its employee's workers' compensation claim on September 23, 1993. On October 29, prior to the Board's approval of the reimbursement agreement, Altermatts entered into a settlement with the employee. That settlement was submitted to the Board for approval on November 10, the very same day the Board approved Altermatts' reimbursement agreement with the Fund.

The Fund subsequently petitioned the Board to rescind the reimbursement agreement on the ground that Altermatts did not comply with the provisions of OCGA § 34-9-363.1 (b) because it failed to obtain the Fund's approval of the employee settlement prior to submitting that settlement to the Board. The ALJ agreed, declared the reimbursement agreement null and void as provided for in OCGA § 34-9-363.1 (b), and ordered Altermatts to reimburse the Fund for any monies it had previously received under the agreement. The Board affirmed the ALJ's order and the superior court affirmed the Board.

OCGA § 34-9-363.1 (a) provides that "[a]fter the employer or insurer and the . . . Fund reach an agreement with respect to reimbursement and either the reimbursement agreement is approved by the . . . Board of Workers' Compensation or the . . . Board . . . orders reimbursement . . . , the employer or the insurer shall have a continuing obligation to keep the . . . Fund informed as to any proposed settlement agreement . . . between the employee and the employer. . . ." Subsection (b) of the statute provides that "[t]he employer or the insurer shall obtain the approval from the . . . Fund for any and all settlement agreements between the employee and the employer . . . in all cases where a reimbursement agreement . . . exists prior to the submitting of the settlement to the . . . Board . . . for approval; provided, however, that if the employer . . . fails to obtain the approval from the . . . Fund for such a settlement agreement, but the . . . Board . . . approves such agreement, the reimbursement agreement between the employer . . . and the . . . Fund shall become null and void, and the . . . Board . . . shall . . . [rescind] the reimbursement agreement. . . ."

The Subsequent Injury Trust Fund was created by the State to protect employers and insurers from excess liability for compensation paid to disabled workers whose job injury caused a greater disability than if the worker had not been previously disabled. OCGA § 34-9-350. It protects employers and insurers by reimbursing them for pay-

ing such compensation to the injured employee, according to a statutory scheme. OCGA § 34-9-360.

Reimbursement is based on payment of workers' compensation benefits in accordance with OCGA § 34-9-221 or a Board award, and the Fund is to reimburse only certain weekly income benefits and a prescribed portion of "only those indemnity, medical, and rehabilitation expenses that the employer or insurer was legally obligated to pay to the employee or claimant." OCGA § 34-9-360 (f).

To carry out this program, the law provides for agreements to be entered into between the Fund and the employer or insurer with respect to reimbursement, and if an agreement cannot be reached, for the Workers' Compensation Board to decide the employer or insurer's right to reimbursement. OCGA § 34-9-363. Compromise settlements are also permitted. Id.

To assure that reimbursement is made for no more than the Fund's portion of what the employer or insurer is obligated to pay the injured worker, the law imposes a duty on the employer/insurer to notify the Fund administrator of proposed settlement agreements made with the employee. OCGA § 34-9-363.1. Evidencing the legislature's realization that these settlements may occur at different times as the employer/insurer works out its agreement with the Fund and negotiates with the worker, the statute prescribes particular duties depending on the scenario.

In this instance, the employer/Fund reimbursement agreement was executed on September 23; the employer/employee settlement was reached on October 21 and executed on October 29; the employer/Fund reimbursement agreement, having been submitted by the employer to the Workers' Compensation Board, was approved by it on November 10; by happenstance on the same day, the employer submitted to the Board its settlement agreement with the employee, without notifying the Fund of this agreement; and the employer/employee settlement agreement, of which the Fund still had not been notified, was approved by the Board on November 16.

By the terms of the approved reimbursement agreement, the Fund was obligated to reimburse the employer for more than the employer was entitled to under OCGA § 34-9-360. The Fund had no opportunity to adjust the reimbursement agreement based on the employer's settlement agreement with the employee.

We must consider the purpose of the Fund and the apparent intent of OCGA § 34-9-363.1 to handle the respective rights and responsibilities of the three contracting parties (Fund, employer, employee) when the special requirement of Board approval of the two contracts (Fund/employer and employer/employee) must be fit into the scheme.

With that in mind, and giving words their ordinary meaning, we agree with the ALJ, Board, and the superior court. The employer and

the Fund "reached an agreement" on September 23, on which date it "existed," binding them both; only a third entity, the Workers' Compensation Board, need approve it before it could be enforced. A term of the agreement itself is that: "Prior to the Employer/Insurer entering into a settlement agreement with the Employee, the Employer/Insurer shall obtain approval from the Administrator of the Subsequent Injury Trust Fund. OCGA § 34-9-363.1 (b)." From September 23, both contractually and by statute, the employer had "a continuing obligation to keep the administrator of the . . . Fund informed as to any proposed settlement agreement" with the employee. This was required so the Fund could give or withhold its "approval" of the settlement agreement before it was submitted by the employer to the Workers' Compensation Board. The Fund was given this statutory opportunity to protest an agreement to which it was not a party, because of the settlement agreement's effect on the reimbursement agreement to which it was already conditionally bound. It is the entity financially responsible ultimately for payment based on the settlement agreement.

The objective of the Fund is to provide a limited, discernible amount of reimbursement to the employer or insurer, no more. A contrary resolution of the issue would allow more. The declaration that the reimbursement agreement was null and void, and the order for reimbursement of the Fund, is upheld. *Bekaert Steel Wire Corp. v. Ga. Subsequent Injury Trust Fund*, 191 Ga. App. 490 (382 SE2d 197) (1989). Settlements must be submitted first to the Fund even when the reimbursement agreement has not been approved.

*Judgment affirmed. McMurray, P. J., and Pope, P. J., concur. Blackburn and Smith, JJ., concur in the judgment only. Birdsong, P. J., Andrews, Johnson and Ruffin, JJ., dissent.*

RUFFIN, Judge, dissenting.

I respectfully dissent because I agree with Altermatts that the reimbursement agreement did not exist prior to its approval by the Board on November 10. Webster's Collegiate Dictionary (9th ed.) defines "exist" as "to have real being . . ." and "to have life or the functions of vitality." Here, the agreement had no material being until it was approved by the Board because there was no obligation for the Fund to make payments until such approval was achieved. See OCGA § 34-9-363 which provides that after an agreement has been reached with respect to reimbursement, "it shall be . . . submitted to the . . . [b]oard . . . for approval. The board shall consider [the reimbursement] agreement upon receipt thereof and, if it finds it to meet the provisions of this article, shall approve the agreement and issue its order directing the agreed reimbursement."

It is my opinion that this interpretation of the statute is rein-

forced by the fact that subsections (a) and (b) of the current OCGA § 34-9-363.1 are sequential. In other words, it would make little sense for the General Assembly to set forth in subsection (a) the specification that the reimbursement agreement must not only be reached but also approved by the Board before an obligation with respect to settlement is imposed, only to follow in subsection (b) with the imposition of an additional obligation (obtaining pre-approval) during a period in which the reimbursement agreement has been entered into but not yet approved. This, the majority ignores. See *Gilbert v. Richardson*, 264 Ga. 744 (3) (452 SE2d 476) (1994) (reiterating that a statute should be construed to make all its parts harmonize and give sensible effect to each part). *Bekaert Steel Wire Corp. v. Ga. Subsequent Injury Trust Fund*, 191 Ga. App. 490 (382 SE2d 197) (1989), cited by both the superior court and the majority, is inapplicable because it addressed a completely different factual situation — the negotiation of a settlement agreement *after* the reimbursement agreement was approved — than the instant case.

I am authorized to state that Judge Andrews and Judge Johnson join in this dissent.

DECIDED DECEMBER 5, 1995 — 

*Lowendick, Speed & Donahue, Charles G. Hoey, Sharon W. Ware & Associates, Reynolds E. Pitts, Jr.*, for appellants.

*Michael J. Bowers, Attorney General, Rita J. Llop*, for appellee.

*Swift, Currie, McGhee & Hiers, Joseph A. Munger*, amicus curiae.